# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ANDREW ROBERSON,          )
                                 )

             **Petitioner,**     )
                                 )

     **vs.**                     )  **Case No.  4:11cv1490 JAR/TCM**
                                 )

MICHAEL BOWERSOX,[1]     )
                                 )

             **Respondent.**    )

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Andrew Roberson (Petitioner), a Missouri prisoner, petitions the United States District Court for the Eastern District of Missouri for federal habeas corpus relief from a conviction after a jury trial.  <u>See</u> 28 U.S.C. § 2254.  Respondent filed a response, along with exhibits consisting of materials from the underlying state court proceedings.[2]  (<u>See</u> Docs. 8, 9, and 12.)

This matter is before the undersigned United States Magistrate Judge for review and a recommended disposition of Petitioner's federal habeas petition.  <u>See</u> 28 U.S.C. § 636(b).  After careful consideration, the undersigned will recommend the denial of the petition upon concluding that Petitioner is not entitled to relief because grounds one and four are

---

[1] Petitioner is serving concurrent terms of imprisonment as a result of the judgment he is challenging in this habeas proceeding.  Because Petitioner is not challenging a sentence he will serve in the future, it is not necessary to name the Attorney General of Missouri, Chris Koster, as a respondent in this case.  <u>See</u> Rule 2(b), Rules Governing Section 2254 Cases in the United States District Courts.

[2] The undersigned will direct that the legal file for the underlying state criminal case, designated as Respondent's Ex. A [Doc. 9], be maintained under seal because it discloses a complete social security number, <u>see</u>, <u>e.g.</u>, Complaint, Legal File, Resp't Ex. A at 8; Indictment, <u>id.</u> at 14; Substitute Info., <u>id.</u> at 47; and Judgment, <u>id.</u> at 92.

procedurally defaulted; Petitioner failed to demonstrate either cause and prejudice or actual innocence so as to allow this Court to consider the merits of either of those procedurally defaulted claims; and grounds two and three should be denied for lack of merit.

## Background

Petitioner was charged, as a prior offender, with committing in the City of St. Louis ("City") on or about June 2, 2004, first-degree murder in violation of Mo. Rev. Stat. § 565.020, and armed criminal action in violation of Mo. Rev. Stat. § 571.015, when he knowingly caused the death of Dominic Williams ("Victim") by strangling Victim through the use of a dangerous instrument. (Substitute Info., Legal File, Resp't Ex. A, at 47.)

During the four-day jury trial, which began on October 30, 2006, the State presented the testimony of ten witnesses. (Trial Tr., Resp't Ex. K.) Shantella Rockette (id. at193-247), Petitioner's sister, testified that, earlier in 2006, she pleaded guilty in St. Louis County ("County") to first-degree burglary, first-degree robbery, and felonious restraint, and was sentenced to "120 day shock" incarceration, which she served, plus five years' probation. (Id. at 194-95.) When asked if her testifying in Petitioner's criminal case "ha[d] anything to do with [her] pleading guilty and being placed on probation after the 120 days," Rockette responded "no." (Id. at 195.) Additionally, Rockette testified:

> [Prosecuting Attorney]: Are you expecting somehow any leniency from the County court by cooperating here or anything like that?
>
> [Rockette]: No.
>
> [Prosecuting Attorney]: Have I tried to make any deals with you or offered you anything?

[Rockette]: No.

[Prosecuting Attorney]: Have you asked for anything?

[Rockette]: No.

[Prosecuting Attorney]: And do you expect anything?

[Rockette]: No.

\*    \*    \*

[Prosecuting Attorney]: Have you ever asked me or anybody else for any kind of benefit for testifying or cooperating?

[Rockette]: No.

[Prosecuting Attorney]: Have you been promised anything or offered anything by anybody in exchange for your cooperation?

[Rockette]: No.

(Id. at 195-96, 241-43.)

With respect to the charges against Petitioner, Rockette testified that in early June 2004 Petitioner called her and described how he hit a "man" who was coming into his home in the chest, knocking the "man" to the ground; then tied the "man" up and choked him with a cord before cutting off the "man's" clothes and placing the body under the couch until he put the body in a trash can, placed the trash can on a "two-wheeler" he had borrowed from Carlos Crump, and moved the trash can to a location around the corner from his house, cleaned his house, and disposed of his and Victim's clothing. (Id. at 200-04.) Later that day, with Crump and others, Rockette stopped by Petitioner's home and Petitioner described where the trash can

was; Rockette, Crump, and the others found the trash can; and Crump looked inside the trash can and came back to the group reporting that Petitioner was "not lyin.'" (Id. at 205-08, 238-40.) Rockette subsequently called the police to report anonymously the location of the body, and then went to the police station to tell them what she knew. (Id. at 209-12.) When she was talking with the police, she testified, no one promised her "anything, any benefits or anything like that . . . to get [her] to testify." (Id. at 221.) At trial, Rockette identified pictures depicting where the trash can was found and what Petitioner's house looked like in June 2004, including the couch inside the house. (Id. at 213-21.) Rockette denied having told her mother, Ruthie Williams, that Rockette was using drugs or hallucinating in 2004, or about Petitioner's killing of Victim. (Id. at 227, 229, 245, 246, 247.)

Matthias Hanewinkel (id. at 248-335), a police officer with the City of St. Louis, testified that he investigated the crime and located Victim's body; and identified photographs depicting the location and condition of Victim's body as he found it, as well as a map of the location of Victim's body and Petitioner's house, and pictures of Petitioner's house (id. at 249-57, 265-68, 274). After finding the body, Officer Hanewinkel stated the police department received two anonymous telephone calls reporting that Petitioner was responsible for Victim's death and providing Petitioner's address. (Id. at 253-54.) Four officers went to the address, saw Petitioner run out the back door, and three of the officers chased him. (Id. at 268-69.) Officer Hanewinkel stayed at the residence and, thinking somebody might come out of the house, entered the residence through the back door that had been left open. (Id. at 268-72.) As he walked through the house, he smelled a strong odor of cleaning solutions and cleansers,

noticed brand new unopened cleaning supplies near the front of the house, and saw a bucket with dirty water and a mop in it. (Id. at 273.) He then prepared paperwork for and obtained a search warrant; and with that warrant, as well as Petitioner's written consent to search, returned to search the house. (Id. at 277-79.) During that search certain items were seized, including the unopened cleaning supplies and an extension cord. (Id. at 282-90.) Officer Hanewinkel then spoke with Rockette, who made an audio-taped statement. (Id. at 299-300.) As a result of conversations with her and others, Officer Hanewinkel obtained and executed a second warrant to search Petitioner's house. (Id. at 301-04.) At that time, Petitioner was taken into custody and various items were seized, including a couch, a two-wheel dolly, several blunt instruments, and a number of cords. (Id. at 305, 307.)

Anna Hall (id. at 337-47), Victim's foster mother for the two years prior to his death, identified a picture of Victim, and testified to giving the police medical and dental information about Victim for identification purposes after she was unable to identify him. (Id. at 343, 345-46).

Detective Jeffrey Stone (id. at 349-430), an officer with the City of St. Louis Police Department, also investigated this murder. (Id. at 350.) He saw Petitioner leave his home and participated in the chase of Petitioner when officers first went to Petitioner's house. (Id. at 351-56.) As a result of that chase, Petitioner was taken into custody, received his Miranda warning, was detained on bench warrants for matters unrelated to this murder, and was interviewed by Detective Stone and Detective Carroll about this incident. (Id. at 357-61.) Detective Stone participated in the second search of Petitioner's house, and, after Petitioner

was taken into custody and given his <u>Miranda</u> warnings again, interviewed Petitioner in the presence of another officer. (<u>Id.</u> at 365-67.) During this interview, Petitioner told the officers Victim was standing in Petitioner's kitchen; Petitioner hit him in the chest with a metal pipe knocking him to the floor; Petitioner strangled him with an extension cord until his body went limp; Victim's clothes were cut off; and Victim was placed under the couch. (<u>Id.</u> at 367-80, 412.) In continuing to talk about the incident with the officers, Petitioner reported that he went to bed for awhile and then placed Victim head first into a trash can, with a pillow case on Victim's feet, and used the two-wheeler to move the trash can to a house at the end of the street, before buying and using bleach and ammonia to clean the house and getting rid of the clothing. (<u>Id.</u> at 380-81.) During this conversation with the two police officers, Petitioner also mentioned he had told his sister what had happened. (<u>Id.</u> at 382-83.)

Crump, Petitioner's brother, also testified. (<u>Id.</u> at 431-73.) He said that he went with Rockette and others to locate Victim's body and found it; called the police anonymously to report the body's location; heard from Petitioner that Petitioner had choked a "man" who broke into Petitioner's house and then told the police what Petitioner had told him; and had previously loaned Petitioner an old, two-wheeled, burgundy dolly to use while Petitioner was moving into the house where the murder occurred. (<u>Id.</u> at 435-36, 441-49, 451-55, 462.)

Detective Tom Carroll (<u>id.</u> at 473-87), who works for the City of St. Louis Police Department, investigated the murder; participated in the chase of Petitioner when officers first went to Petitioner's house; interviewed Petitioner after that chase and after Detective Stone read Petitioner his <u>Miranda</u> rights; obtained Petitioner's consent to search his house;

participated in a subsequent search of Petitioner's home; and found and arrested Petitioner in the basement of his house.  (<u>Id.</u> at  476-78, 481, 482-86.)

John Vogan (<u>id.</u> at 488-501), the manager of the Identification Section of the St. Louis Police Department responsible for supervising the Department's fingerprint and photographic services, processed a number of items seized in the investigation of this case for fingerprints, and testified that eleven impressions found on seized items matched Petitioner's fingerprints while no fingerprints were found on several other seized items.  (<u>Id.</u> at 488, 494-97.)

Dr. Jane Turner (<u>id.</u> at 502-20), an assistant medical examiner for the City, performed an autopsy on Victim, testified to Victim's condition at the time of her examination, identified pictures depicting Victim's condition at that time, and opined that Victim died from ligature strangulation, with the ligature marks being consistent with use of a "brown extension cord" looped around Victim's neck.  (<u>Id.</u> at 506-15.)

Samantha Webb (<u>id.</u> at 529-94), a DNA analyst with the St. Louis Metropolitan Police Department Crime Lab, testified that she was a biological screener, a person who opens an evidence bag and examines the evidence for "viable DNA testing," for approximately forty items brought to the laboratory during the investigation of Victim's death.  (<u>Id.</u> at 530-34.) While she did not get "positive presumptive findings for blood or seminal fluid" on each of those items, she did make such findings with respect to a number of the items.  (<u>Id.</u> at 534-36.) Webb also performed a Luminol test of two floors in Petitioner's house, finding indications that blood was present and that cleaning with bleach had occurred on the floor in the room where the couch was.  (<u>Id.</u> at 538-43.)  Further testing revealed the presence of blood in one

area of that floor.  (Id. at 546-48.)  Testing of the couch lining and cushions revealed seminal fluid (of someone unrelated to the case), but no blood.  (Id. at 549-50, 564.)

Jennifer Schoenholz (id. at 556-94), a criminalist with the St. Louis Metropolitan Police Department who analyzed DNA samples related to this case, found the presence of Victim's DNA in a swab taken from the floor of Petitioner's home.  (Id. at 559, 562-64, 565-67; 590.)

Petitioner made an offer of proof by presenting the testimony of William Williams (id. at 596-600), Ruthie Williams' husband, who discussed what occurred the evening before his trial testimony; and of Ruthie Williams (id. at 600-15), Petitioner's mother, about conversations she had with Petitioner, Rockette, and Crump regarding Victim's death and her response that she "didn't want to hear" about it and "didn't want to be a part of it."  The trial court sustained the State's objection to the offer of proof not permitting presentation of the testimony during trial.  (Id. at 618.)  The trial court concluded that William Williams had not been endorsed as a witness; and any testimony by Ruthie Williams was "irrelevant to any issue in the case" because she had no knowledge of the facts in that she "testified that she purposely would not allow anyone to tell her anything . . . relevant in this case because she didn't want to be a part of it."  (Id. at 616.)

After unsuccessfully moving for judgment of acquittal at the close of the State's evidence, based on his position that the State had failed to make a submissible case on each and every element of the charged offenses, Petitioner (id. at 619-74) testified that Victim was killed by others who had been visiting Petitioner at his house, including James Crenshaw, in Petitioner's absence.   The trial court denied Petitioner's subsequent motion for judgment of

acquittal at the close of all the evidence (id. at 877); granted the State leave to amend the substitute information by interlineation to reflect correctly that Petitioner's prior guilty plea was in 1988 (id. at 679; see also Court Order, dated Nov. 2, 2006, Legal File, Resp't Ex. A, at 81); and found Petitioner was a prior offender (Trial Tr., Resp't Ex. K, at 679).

The jury found Petitioner guilty of the charged offenses. (Id. at 707.) The trial court subsequently sentenced Petitioner to two concurrent terms of imprisonment - life without parole for the first-degree murder offense and life for the armed criminal action offense. (Sentencing Proceeding Tr., Legal File, Resp't Ex. A, at 710-23; J., filed Dec. 15, 2006, Legal File, Resp't Ex. A, at 92-94.)

In his direct appeal, Petitioner raised two points. First, Petitioner challenged the trial court's overruling of Petitioner's motion to suppress and admitting into evidence a photograph of the two-wheeled cart and the unopened cleaning supplies (Exhibit 22), as well as a close-up of Exhibit 22 (Exhibit 23), the evidence bag containing cleaning supplies and a mop (Exhibit 52), and Detective Hanewinkel's testimony that he smelled a strong odor of cleaning solutions and cleansers in Petitioner's house, on the grounds that Hanewinkel's initial search of the house without a warrant, consent, or an exigency violated Petitioner's rights to due process and to be free of an illegal search and seizure as guaranteed under the Fourth, Fifth, and Fourteenth Amendments. (Pet'r Br., Resp't Ex. B, at 2, 15-16, and 19-20.) In his second point, Petitioner contended that his due process right to a fair trial, as guaranteed by the Fifth and Fourteenth Amendments, was violated by the trial court's exclusion of Ruthie Williams' testimony regarding specific information about the incident reported to her by Rockette and Crump,

which information would have impeached Rockette's and Crump's credibility, conveyed their motives to lie about Petitioner, and attacked Rockette's veracity based on her reputation in the community. (Id. at 2-3, 17-18, and 29-30.)

The Missouri Court of Appeals for the Eastern District of Missouri affirmed the judgment in a summary order, supplemented by a memorandum sent only to the parties setting forth the reasons for the decision. (Per Curiam Order and Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Dec. 26, 2007, Resp't Ex. D.) In its opinion, the state appellate court found the facts as follows.

> In June of 2004, Victim, a sixteen year-old boy, entered [Petitioner]'s house through the back door. At that time, [Petitioner] was upstairs. After hearing someone downstairs, [Petitioner] confronted Victim in the kitchen. [Petitioner] hit Victim with a metal pipe knocking him to the floor. [Petitioner] then tied Victim's hands, . . . got gloves from the next room and an extension cord[,] and went back and strangled Victim until his body went limp.

> After Victim had been killed, [Petitioner] cut off Victim's clothes. [Petitioner] could not immediately dispose of Victim's body because there were neighbors outside. Instead [Petitioner] put the body under the couch and went to sleep upstairs. The next day [Petitioner] put the body in a trashcan and used a two-wheel dolly to transport the trashcan down the alley where he abandoned it.

> Subsequently, [Petitioner] bought fifty dollars worth of cleaning supplies and cleaned his house. [Petitioner] later disposed of his clothes, Victim's clothes, and some of the supplies.

> Shortly thereafter, [Petitioner] told his sister, Shantella Rockette ("Rockette"), about what he had done to Victim. After getting off the phone with [Petitioner], Rockette went downstairs and woke up Carlos Crump ("Crump"), Rockette and [Petitioner]'s brother, to tell him about the situation. Rockette, Crump, and three others went to [Petitioner]'s house, at which time Rockette talked to [Petitioner]. After speaking with [Petitioner], Rockette left with Crump and the three others, but [Petitioner] stayed behind. Rockette and

the group went to look for the dead body [Petitioner] had described to Rockette. Rockette and the group eventually found the trashcan and discovered the body inside. After discovering the body, Crump made an anonymous call to report the body. Rockette also made an anonymous call to the police to report the body.

Detective Matthias Hanewinkel ("Detective Hanewinkel") and Detective Jeffrey Stone ("Detective Stone") responded to the 5300 block of Euclid where they found Victim's body in the trashcan. It was later confirmed that the body was Victim, who had been reported missing.

A few days after Victim's body was located, the police received two anonymous phone calls saying [Petitioner] was responsible for Victim's death. Subsequently, Detective Hanewinkel, Detective Stone, and a group of officers went to [Petitioner]'s house. The detectives knocked on [Petitioner]'s front and back doors, but no one answered. Then the detectives decided to talk to [Petitioner]'s neighbors to see if anyone knew his whereabouts. As the detectives began to fan out, [Petitioner] ran from the back door of his house. Detective Stone and two other officers chased [Petitioner] while Detective Hanewinkel remained at the house.

Detective Hanewinkel "was worried somebody else would come out and try to get us so [he] entered the house" through the open back door and walked through the house. Detective Hanewinkel did not find anyone, although he did smell a strong odor of cleaning solutions and observed some new cleaning supplies.

[Petitioner] was eventually apprehended and taken to the police station. [Petitioner] was then interviewed and he denied any involvement in Victim's murder. During the interview, Detective Hanewinkel interrupted and asked [Petitioner] if he would consent to a search of his house. [Petitioner] signed consent forms permitting the officers to search his home. Detective Hanewinkel also secured a search warrant.

Subsequently, [Petitioner]'s house was searched. During the search, the officers seized among other things, brand new cleaning supplies, and a mop and bucket. The police also took photos of the interior of the house depicting the placement of these and other items.

A few days later Detectives Hanewinkel and Stone went to Crump's house where they ran into Rockette. Rockette would not speak to them at that

time, but the next day she gave the police a recorded statement at the station.

The police then conducted a second search of [Petitioner]'s house based on information they had gained from people they had interviewed. When the police arrived at the house to conduct the second search, no one answered the door. The police heard someone inside though so they breached the door and found [Petitioner] hiding behind the furnace in the basement at which time he was arrested. During the second search, [Petitioner]'s couch was seized along with the two-wheel dolly and various extension cords and telephone cords. Evidence technicians used Luminol to search for trace blood evidence. It appeared the floor had been cleaned with bleach, but a few areas illuminated for blood. Swabs were taken from those areas and two of the swabs were consistent with the DNA of Victim to the exclusion of one in fifty-six quadrillion.

After proceedings began against [Petitioner], he filed a motion to suppress as evidence in his case "any and all articles seized and intended to be used against [Petitioner], and any testimony regarding such evidence" because it was obtained pursuant to an unlawful search and seizure. This motion was taken with the case.

After the jury returned its verdict, [Petitioner] filed a motion for judgment of acquittal or in the alternative for a new trial in which he argued, in pertinent part, that the State failed to make a submissible case, the trial court erred in overruling [Petitioner]'s motion to suppress evidence and in admitting the evidence, the trial court erred in admitting Rockette's testimony that the two-wheel dolly came from Crump because it was hearsay, the trial court erred in overruling [Petitioner]'s objection and admitting evidence as to whether law enforcement had heard from any other source that Rockette was a habitual liar and a drug addict, and the trial court erred in prohibiting [Petitioner] from calling [Ruthie] Williams, the mother of [Petitioner], Rockette, and Crump, as a witness. [Petitioner]'s motion was denied, and this appeal follows.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Dec. 26, 2007, Resp't Ex. D, at 2-5 (twenty-seventh alteration in original).)

In relevant part, the state appellate court denied Petitioner's second point on appeal with the following discussion.

In [Petitioner]'s second point, he argues the trial court erred and abused

its discretion in excluding the testimony of [Ruthie] Williams [("Williams")] that (1) Rockette told Williams that when Rockette spoke to police in 2004 about the murder of Victim, she had been hallucinating from drug use, which was why she should never have gone to the police and why she did not want to testify against her brother; (2) Crump told Williams that he told the police [Petitioner] admitted to Crump that [Petitioner] had killed Victim because the police threatened to charge Crump in a previous case; (3) Rockette told her mother she had lied when she told the police [Petitioner] admitted to killing Victim; (4) Crump told Williams that he only spoke to the police because he wanted to collect the reward money; and (5) Rockette had a reputation in the community for lying. [Petitioner] argues the trial court's exclusion of this testimony prevented [Petitioner] from impeaching the credibility of Crump and Rockette with their prior inconsistent statements, from exposing Crump and Rockette's motives to lie, and from attacking Rockette's veracity. [Petitioner] argues he was prejudiced because the testimony of Crump and Rockette was the impetus for the investigation of [Petitioner] for Victim's murder. We disagree.

\* \* \*

Williams's testimony was excluded as a result of a motion in limine filed by the State, but that motion is not part of the record on appeal. After the State had presented its case, the defense made an offer of proof regarding Williams's testimony. Williams testified that Crump told her he had been threatened by a detective and that he had said he wanted the reward money. Williams also testified that Rockette had told her she did not remember anything she had told the detectives and that she regretted going down there because what she said was a lie. Moreover, Williams testified that Rockette had a reputation for lying in the community and that she had drug-induced hallucinations.

Then the defense asked whether Williams would be allowed to testify in open court as she testified in the offer of proof. The court responded

> I think it's apparent from this woman's testimony that she knows nothing about the facts of this case, and she's in fact testified that she purposely would not allow anyone to tell her anything about anything that's relevant in this case because she didn't want to be a part of it. And therefore, I would find that her entire testimony is irrelevant to any issue in this case.

The defense then asked specifically about the prior inconsistent statements of Rockette. The State responded that no foundation had been laid with regard to

those statements. The trial court sustained the State's objection to the offer of proof.

[Petitioner] argues that on cross-examination Rockette testified she denied imagining things or hallucinating; denied telling her mother she was using drugs or hallucinating; denied stating she should never have talked to the police about [Petitioner]; denied stating she did not want to testify against [Petitioner] because she made up everything she had told the police because of her hallucinations; and denied stating that she made up her testimony. Thus, [Petitioner] contends, a proper foundation had been laid for Williams's testimony contradicting Rockette's testimony.

\* \* \*

[E]ven if the trial court did improperly exclude Williams's testimony, [Petitioner] has failed to show prejudice. [Petitioner] argues the testimony of Rockette and Crump caused the police to investigate him as a suspect; however, [Petitioner] fails to acknowledge that there were two anonymous phone calls implicating him in the murder and that [Petitioner] admitted to the police that he killed Victim. Further, Rockette's testimony was corroborated by [Petitioner]'s confession, Crump's testimony, as well as the physical evidence introduced at trial. We find there was not a reasonable probability that but for the trial court's error in excluding Williams's testimony the verdict would have been different in this case. [State v. ] Cannon, 215 S.W.3d [295,] 298 [(Mo. Ct. App. 2007)].

[Petitioner]'s claims of error regarding Crump's statements are similarly without merit. At trial, [Petitioner] failed to argue [he] wanted Williams to testify regarding prior inconsistent statements made by Crump. In his motion for new trial, [Petitioner] argued the trial court erred in not allowing him to elicit testimony from Williams impeaching Crump's testimony regarding his relationship with Williams. Now [Petitioner] claims [the] trial court erred in not allowing him to elicit testimony from Williams because Crump told Williams he only spoke to the police because the police threatened him and he wanted the reward money.

[Petitioner] is advancing this novel argument for the first time on appeal, and his claim of error is, therefore, not preserved. Thus, we review [Petitioner]'s claims as to Crump for plain error.

In this case, the defense never asked Crump about statements he made to

Williams, and the State did not lay the foundation for the defense in Crump's case. Because the defense failed to lay a proper foundation to show how Williams's testimony would demonstrate Crump had made prior inconsistent statements, the trial court did not commit plain error in excluding Williams's testimony.

Further, the trial court specifically found after the offer of proof that Williams' testimony lacked any probative value. Therefore, we find [Petitioner] has failed to show that any prejudice resulted from the trial court's exclusion of Williams's testimony. Point denied.

(Mem. Supplementing Order Affirming J. Pursuant to Rule 30.25(b), dated Dec. 26, 2007, Resp't Ex. D, at 9-12.)

Petitioner did not seek further review within fifteen days of the issuance of the state appellate court's decision, see Mo. Sup. Ct. R. 83.02, and the Missouri Court of Appeals issued its mandate on January 17, 2008. (Jan. 17, 2008 docket entry in State v. Roberson, No. ED89096 (Mo. Ct. App.) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do) (last visited July 15, 2014).)

On February 25, 2008, Petitioner timely filed a pro se post-conviction motion pursuant to Missouri Supreme Court Rule 29.15, setting forth various claims. (Legal File, Resp'ts Ex. E, at 3-10.) Petitioner argued, in relevant part, that the trial court erred in not allowing Williams to testify regarding what Rockette and Crump had told her and that Rockette had a reputation for lying. (Id. at 5.) Petitioner further challenged the admission into evidence of Exhibits 22, 23, and 52, as well as Detective Hanewinkel's testimony regarding the odor of cleaning solutions in Petitioner's house; Petitioner's receipt during trial of a fifteen-page incident report; Detective Hanewinkel's "[i]llegal entry [into Petitioner's] house" before

Petitioner was in custody; Petitioner's trial attorney's failure to argue Williams should be allowed to testify regarding inconsistent statements of the State's witnesses; his trial attorney's failure to file a notice of deposition of Rockette and Crump; Petitioner's trial attorney's admission that she did not have time to investigate in preparation of Petitioner's defense; his trial attorney's improper questioning of Petitioner during trial; his trial attorney's failure "to file "proper motions eliciting testimony of Detective Jeffrey Stone"; and Detective Stone's failure to "provide[ the] trial court with the audio, video, and hand written" statements of Petitioner's alleged confession. (Id. at 6.)

Through counsel, Petitioner subsequently filed an amended post-conviction motion, including a request for an evidentiary hearing. (Pet'r Am. Post-Conviction Mot., Legal File, Resp't Ex. E, at 11-40.) In this motion, Petitioner set forth three claims arising out of his trial attorney's conduct. (Id. at 14-16.) First, Petitioner argued that his rights to due process, to the effective assistance of counsel, to effective cross-examination, and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments were violated by his trial attorney's failure fully to investigate whether a prosecuting attorney's office gave Rockette lenient disposition of her charges in exchange for her testimony against Petitioner and by his trial attorney's failure to cross-examine Rockette based on that leniency. (Id. at 14-15.) Next, Petitioner argued that his rights to a fair trial, to due process, and to freedom from cruel and unusual punishment under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated by his trial attorney's failure to investigate the police intimidation that occurred when "the State threatened to arrest and charge . . . Crump with an unrelated murder case unless he testified at [Petitioner's] trial."

(Id. at 15.)  Finally, Petitioner contended that his rights to due process, to the effective assistance of counsel, to present a defense, and to a fair trial under the Fifth, Sixth, and Fourteenth Amendments were violated when Petitioner's trial attorney failed to investigate, subpoena, and call Crenshaw as a witness at trial, because Crenshaw would have "corroborated" that Crenshaw was at Petitioner's house with Petitioner, Victim, and another. (Id. at 15-16.)

The motion court held an evidentiary hearing on the claim regarding Crenshaw only.  (See Mot. Hr'g Tr., Resp't Ex. I, at 3.)  During that hearing, Petitioner, Petitioner's trial attorney, and Crenshaw testified.  (Mot. Hr'g Tr., Resp't Ex. I.)  Petitioner's trial attorney testified that she knew about Crenshaw and decided not to talk with him directly, while looking into other aspects of the evening at Petitioner's house (id. at 3-11); Petitioner testified that he wanted to establish that Crenshaw was at his home when Victim was (id. at 13-18); and Crenshaw pleaded the Fifth Amendment in response to every question asked of him after his name was requested (id. at 19-20).  The motion court subsequently denied Petitioner's post-conviction motion.  (J., Legal File, Resp't Ex. E at 42-54.)

Petitioner presented three points in his timely post-conviction appeal.  (Pet'r Br., Resp't Ex. F.)  For his first point, Petitioner contended that his rights to due process, to effective cross-examination, to a fair trial, and to the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments were violated because his trial attorney failed fully to investigate whether the St. Louis County prosecuting attorney's office had given Rockette a lenient disposition of her charges in exchange for her testimony against Petitioner in his

criminal trial in St. Louis City; and his trial attorney failed to impeach Rockette on the basis

of that leniency. (Id. at 19, 23.) Next, Petitioner argued that his rights to a fair trial, due

process of law, and to freedom from cruel and unusual punishment under the Fifth, Sixth,

Eighth, and Fourteenth Amendments were violated because his trial attorney failed to

investigate allegations of police intimidation when the State threatened to arrest and charge

Crump "with an unrelated murder case" unless he testified at Petitioner's trial. (Id. at 20, 32.)

Finally, in his third point, Petitioner urged that the motion court erred in denying his post-

conviction motion after a hearing in that his rights to due process, to the effective assistance

of counsel, to present a defense, and to a fair trial under the Fifth, Sixth, and Fourteenth

Amendments were violated because his trial attorney did not investigate Crenshaw and call

him as a witness at trial when Crenshaw could have been located, would have testified if

called, and "his testimony would have corroborated [Petitioner]'s testimony and defense that

. . . Crenshaw was at [Petitioner]'s house and had strangled [Victim]." (Id. at 22, 39.)

The Missouri Court of Appeals for the Eastern District affirmed the motion court's

decision in a published opinion. (Roberson v. Missouri, No. ED94806, Opinion, dated Mar.

29, 2011, Resp't Ex. H.) In its opinion, the state appellate court summarized Petitioner's case

as follows.

> Both charges against [Petitioner] stem from the June 2004 murder of a
> sixteen-year old boy police found strangled to death [and] shoved inside a trash
> can on a vacant lot in St. Louis City. The police first learned of the murder and
> [V]ictim's location through tips from two anonymous callers - later identified as
> [Petitioner]'s sister, . . . Rockette, and [Petitioner]'s brother, . . . Crump - both
> implicating [Petitioner] as the killer. Subsequent police investigations revealed
> substantial evidence of [Petitioner]'s guilt, including blood stains on his floor

matching . . . [V]ictim's DNA, items at his house linking [Petitioner] to . . . [V]ictim and the disposal of . . . [V]ictim's body, various statements [Petitioner] made to the police, and his efforts to avoid arrest.

\* \* \*

The Judgment is affirmed.

Id. at 1. Citing to **Strickland v. Washington**, 466 U.S. 668 (1984), the state appellate court found each of Petitioner's three points challenging the effectiveness of his trial attorney's representation was without merit. In relevant part, the Missouri Court of Appeals stated the following with respect to points one and three:

### Point 1: Failure to Impeach Rockette About Alleged Leniency

[Petitioner] claims trial counsel was ineffective for failing to investigate whether the St. Louis County Prosecuting Attorney's office leniently disposed of charges against . . . Rockette - unrelated to this case - in exchange for her trial testimony against [Petitioner]. [Petitioner] also claims trial counsel ineffectively failed to impeach . . . Rockette about this alleged exchange of leniency. The record, however, repeatedly contradicts [Petitioner]'s claim, while offering virtually no evidence to support it.

To prove trial counsel's ineffectiveness for failing to impeach a witness, a movant must show that the impeachment would have provided a viable defense or would have otherwise changed the trial outcome. State v. Davidson, 308 S.W.3d 311, 317 (Mo. [Ct.] App. . . . 2010). In the present case, . . . Rockette testified at trial that the County's disposition of its charges against her had no bearing on her testimony against [Petitioner], that she was neither given nor promised anything in exchange for testifying, and that she expected nothing in exchange for her testimony. Nothing in the record suggests that . . . Rockette's answers would have been any different if defense counsel had cross-examined her in greater detail about the disposition of those charges. And attempting to impeach . . . Rockette more aggressively on this issue would not have provided [Petitioner] with a viable defense, since the testimony could not have negated any element of either crime of which [Petitioner] was convicted.

At base, there is no reasonable likelihood that any additional information

elicited from . .. Rockette by further impeachment would have changed the trial's ultimate outcome, especially given that . . . Rockette made various police statements implicating [Petitioner] long before the County filed its unrelated charges against her. Consequently, the jury would not likely have believed that . . . Rockette's testimony was fabricated for personal gain. In light of the substantial other evidence indicating [Petitioner]'s guilt, we find that defense counsel's impeachment of . . . Rockette would not have affected the trial verdict. Thus,l the trial court did not clearly err in finding that the record refuted [Petitioner]'s first claim and in denying it without an evidentiary hearing. The lower court's judgment is affirmed.

*   *   *

## Point 3: Failure to Call James Crenshaw as A Witness

[Petitioner]'s final claim on appeal is that trial counsel ineffectively failed to call . . . Crenshaw as a defense witness at trial. [Petitioner] claims Crenshaw's testimony would have corroborated [Petitioner]'s defense - namely, that Crenshaw strangled . . . [V]ictim. The [motion] court previously held an evidentiary hearing on this claim based on [Petitioner]'s assertion that Crenshaw would testify that he left [Petitioner]'s house with . . . [V]ictim after getting into a fight, and that [Petitioner] did not strangle . . . [V]ictim. At the evidentiary hearing, Crenshaw was called as a witness for [Petitioner]. Aside from giving his name, Crenshaw pleaded the Fifth Amendment in response to every other question asked.

After the hearing, the [motion] court denied this claim, finding that [Petitioner] failed to prove Crenshaw would have testified if called at trial, or that he could have even been found. The court also noted that [Petitioner] admitted he did not expect Crenshaw to confess, just to confirm he was at [Petitioner]'s house on the night . . . [V]ictim was killed. The [motion] court concluded that such testimony would have neither provided [Petitioner] a viable defense nor established Crenshaw as . . . [V]ictim's killer], and that defense counsel's testified-to trial strategy was reasonable.

Counsel's decision whether or not to call a witness is virtually unchallengeable trial strategy. <u>Worthington v. State</u>, 166 S.W.3d 566, 577 (Mo. banc 2005). To prove trial counsel's ineffectiveness for failing to investigate and call a witness, a movant must demonstrate that: (1) counsel knew or should have known of the witness' existence; (2) the witness could have been located

through reasonable investigation; (3) the witness would have testified; and (4) the witness' testimony would have produced a viable defense. Hurst v. State, 301 S.W.3d 112, 117 (Mo. [Ct.] App. . . . 2010). If that testimony would not have unqualifiedly supported the movant, counsel is not ineffective for failing to call the witness to testify. Id. Movant bears the burden on appeal of proving grounds for relief by a preponderance of the evidence. Nicklasson v. State, 105 S.W.3d 482, 484 (Mo. banc 2003).

Here, [Petitioner] has failed to meet that burden. Of the four proof requirements, the record evidence satisfies only the first: that trial counsel knew of . . . Crenshaw's existence. And though [Petitioner] testified that he gave trial counsel Crenshaw's address, the court was entitled to disbelieve his testimony in favor of counsel. Hurst . . ., 301 S.W.3d [at] 117 . . . . [Petitioner] offered no evidence other than his own trial testimony to prove Crenshaw would have testified and would have thereby given [Petitioner] a viable defense. We reiterate that Crenshaw pleaded the Fifth to everything but his name when called to testify at the evidentiary hearing - a fact that refutes rather than supports the likelihood that he would have meaningfully testified at trial. Accordingly, [Petitioner] has failed to prove Crenshaw's testimony - assuming he would have given it - would have given him a viable defense.

When defense counsel believes that a witness's testimony would not unequivocally support the defense position, it is a matter of trial strategy for counsel not to call that witness, and counsel's failure to call such witness is not ineffective assistance. Wilson v. State, 226 S.W.3d 257[,] 261-62 (Mo. [Ct.] App. . . . 2007). "An attorney is not ineffective for failing to further investigate or call a witness to testify who is unwilling to do so and who cannot be counted on to give testimony favorable to the client." Clayton v. State[,] 63 S.W.3d 201, 208 (Mo. banc 2001). In this case, we find there was sufficient evidence indicating Crenshaw would have been unwilling or unreliable as a witness for the defense for counsel to reasonably exclude him. Thus, the [motion] court did not clearly err in finding that defense counsel's strategy respecting Crenshaw was reasonable and therefore denying [Petitioner]'s contrary claim. Accordingly, we uphold that decision.

### Conclusion

Based on the foregoing reasons, we AFFIRM the trial court's Order denying [Petitioner]'s Rule 29.15 motion to vacate on all grounds.

**Roberson v. Missouri**, No. ED94806, Opinion, dated Mar. 29, 2011, Resp't Ex. H, at 3-8.

The state appellate court issued its mandate on April 20, 2011. (See docket sheet for Roberson v. State, No. ED94806 (Mo. Ct. App. filed May 13, 2010) (available at https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited on July 29, 2014).) Petitioner did not pursue further review of the post-conviction motion court's judgment. (Id.)

On August 26, 2011, Petitioner filed his present federal habeas petition, in which he presents four grounds for relief. In his first ground for relief, Petitioner urges that his trial attorney provided ineffective assistance of counsel in violation of the Sixth Amendment by failing "to allow" Ruthie Williams to testify before the jury about the statements Rockette and Crump made to her regarding this incident. (Pet'r Pet'n at 5 [Doc. 1 at 4].) In his second ground, Petitioner contends that his trial attorney provided ineffective assistance by failing to investigate Rockette's criminal case to learn of, and cross-examine her regarding, any benefit she received in her criminal case as a result of her testifying against Petitioner in this case. (Id.) For his third ground for relief, Petitioner argues that his attorney provided ineffective assistance by failing to present Crenshaw as a witness at trial. (Id. at 6 [Doc. 1 at 5].) For his fourth and final ground, Petitioner asserts that his Sixth Amendment rights to the effective assistance of trial counsel and to a fair and impartial jury were violated by his trial attorney's failure to ask for the removal for cause of a venireperson who indicated familiarity with the City's prosecuting attorney. (Id. at 6 [Doc. 1 at 5-6].)

Respondent counters that the first and fourth grounds for relief are procedurally barred, and that all of Petitioner's grounds for relief are without merit.

**Discussion**

<u>Procedural Default.</u>  Petitioner urges in his first ground that his trial attorney provided ineffective assistance of counsel in violation of the Sixth Amendment by failing "to allow" Ruthie Williams to testify before the jury about the statements made to her by Rockette and Crump regarding this incident.  For his fourth and last ground, Petitioner asserts that his Sixth Amendment rights to the effective assistance of trial counsel and to a fair and impartial jury were violated by his trial attorney's failure to ask for the removal for cause of a venireperson who indicated familiarity with the prosecuting attorney in the City of St. Louis.  Respondent counters that these two grounds are procedurally barred, and may not be considered on their merits, because Petitioner failed to pursue them in his post-conviction appeal.  While Respondent did not expressly address the part of ground four in which Petitioner urges that his right to a fair and impartial jury was violated by allowing the venireperson who expressed familiarity with the prosecuting attorney to remain on the jury, that aspect of ground four, to the extent it should be deemed trial error, was not pursued in Petitioner's direct appeal.  Therefore, the undersigned will consider the procedural default of that portion of the fourth ground along with the procedural default of both ground one and the ineffective assistance of trial counsel aspect of ground four.

To avoid procedurally defaulting on a claim, a Petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim.  **<u>Wemark v. Iowa</u>**, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting, in part, <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982) (per curiam));

accord **Baldwin v. Reese**, 541 U.S. 27, 29 (2004). "A claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." **Wemark**, 322 F.3d at 1021 (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)). A petitioner must also exhaust his state remedies, by giving "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." **Grass v. Reitz**, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). Claims that have not been exhausted and fairly presented to the state courts are procedurally defaulted. **Wemark**, 322 F.3d at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

Missouri requires the raising of constitutional claims at the first available opportunity. See **In re J.M.N.**, 134 S.W.3d 58, 73 (Mo. Ct. App. 2004); **In re T. E.**, 35 S.W.3d 497, 504 (Mo. Ct. App. 2001). Alleged trial errors, including constitutional claims of trial error, such as the claim in ground four that Petitioner's right to a fair and impartial jury was violated by keeping on the jury a venireperson reportedly familiar with the City's prosecuting attorney, must be raised on direct appeal; for "[p]ost-conviction motions cannot be used as a substitute for direct appeal or to obtain a second appellate review." **State v. Clark**, 859 S.W.2d 782, 789 (Mo. Ct. App. 1993); accord **State v. Twenter**, 818 S.W.2d 628, 636 (Mo. 1991) (en banc) (a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised by direct appeal may not be litigated in a post-conviction proceeding"). "If the allegations of trial error are constitutional violations, they are not

cognizable [in a post-conviction proceeding] unless exceptional circumstances are shown which justify not raising the constitutional grounds on direct appeal." **Clark**, 859 S.W.2d at 789; accord **Amrine v. State**, 785 S.W.2d 531, 536 (Mo. 1990) (en banc); **Allen v. State**, 903 S.W.2d 246, 247 (Mo. Ct. App. 1995) (per curiam).  Therefore, if an alleged violation of the constitution through trial error is not raised on direct appeal, the claim is defaulted absent exceptional circumstances justifying the failure to raise the error on direct appeal, and, only if such circumstances are shown, may the matter then be pursued in a post-conviction proceeding. Here, Petitioner failed to pursue on direct appeal his claim regarding trial error in retaining the venireperson who acknowledged familiarity with the City's prosecuting attorney; has not established any exceptional circumstances justifying that failure; and, therefore, that claim, which is pursued in ground four, is procedurally defaulted.

Importantly, in Missouri a post-conviction motion proceeding is the exclusive procedure for pursuing in state court any ineffective assistance of counsel claim; a motion court's decision on such a motion is subject to appeal; and successive post-conviction motions are not permitted.  Mo. S. Ct. Rule 29.15(a), 29.15(k); 29.15(l); **Moore-El v. Luebbers**, 446 F.3d 890, 896 (8th Cir. 2006).  Any claim that should have been but was not presented in a post-conviction motion or on appeal from a denial of a post-conviction motion is procedurally defaulted and may not be considered in a federal habeas proceeding.  See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (finding that claims not presented in an amended Rule 29.15 post-conviction motion or appeal from the denial of that motion are procedurally defaulted).

The instances of Petitioner's trial attorney's alleged ineffectiveness set forth in grounds one and four of Petitioner's federal habeas petition were not set forth in Petitioner's amended post-conviction motion and, therefore, were not before the motion court.  <u>See</u>, <u>e.g.</u>, **Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (a pro se allegation not included in the amended post-conviction motion, either through attachment of the pro se motion to the amended motion or through restatement of the claim in the body and text of the amended motion, is "not properly before the motion court").  Petitioner also did not present any of these claims in his post-conviction appeal.  (<u>See</u> Pet'r Br., Resp't Ex. F.)  Under the circumstances, Petitioner has not complied with Missouri's requirements for the presentation to the state courts of the ineffective assistance of counsel claims in grounds one and four of his federal habeas petition; Petitioner does not now have a state court remedy for presentation of those claims; and those grounds for relief are, therefore, procedurally defaulted.  <u>See</u> **Interiano**, 471 F.3d at 856; **Sweet v. Delo**, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (finding one of the petitioner's federal habeas claims defaulted because it was not presented at any stage of his post-conviction proceedings and one of the petitioner's claims defaulted because he "failed to raise it in his post-conviction appeal").

Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court.  **Sawyer v. Whitley**, 505 U.S. 333, 338-39 (1992); <u>accord</u> **Skillicorn v. Luebbers**, 475 F.3d 965, 976-77 (8th Cir. 2007) ("Unless a habeas petitioner shows cause and prejudice or that he is actually

innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims").  "Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] .. . 'impeded [his] efforts to comply with the State's procedural rule.'" **Maples v.  Thomas**, 132 S. Ct. 912, 922 (2012) (alterations in original) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991)).  There is no exhaustive catalog of the objective impediments "and the precise contours of the cause requirement have not been clearly defined." **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999).

Petitioner has not demonstrated any cause for his failure to present to the state courts the ineffective assistance of counsel claims in grounds one and four, as well as the trial error claim in ground four.  Because no cause has been established, it is unnecessary to consider whether Petitioner has demonstrated prejudice.  **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996) (en banc).

The merits of Petitioner's defaulted claims may be reached, despite the absence of a showing of cause and prejudice for his procedural default, if he establishes that a failure to consider the claims' merits will result in a fundamental miscarriage of justice.  That exception to a claim's procedural bar "requires a habeas petitioner to present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted." **Abdi v. Hatch**, 450 F.3d 334, 338 (8th Cir. 2006).  Petitioner must show not only new evidence, but "that 'it is more likely than not that no reasonable [fact-finder] would have convicted him in

light of th[at] new evidence.'" **Osborne v. Purkett**, 411 F.3d 911, 920 (8th Cir. 2005) (quoting

Schlup v. Delo, 513 U.S. 298, 327 (1995)); accord **House v. Bell**, 547 U.S. 518, 536-39 (2006)

(Schlup standard applies to determine whether defaulted claims in a first federal habeas

petition should be considered based on actual innocence). Evidence is "new" for purposes of

this test "if it was 'not available at trial and could not have been discovered earlier through the

exercise of due diligence.'" **Osborne**, 411 F.3d at 920 (quoting Amrine v. Bowersox, 238 F.3d

1023, 1029 (8th Cir. 2001)). "'Without any new evidence of innocence, even the existence of

a concededly meritorious constitutional violation is not in itself sufficient to establish a

miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'"

**Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner has not submitted any new evidence of his actual innocence so as to permit

this Court to consider the merits of Petitioner's defaulted claims.

Under the circumstances, grounds one and four are procedurally barred due to

Petitioner's procedural default and failure to demonstrate either cause and prejudice or a

fundamental miscarriage of justice to support consideration of the merits of those procedurally

barred claims. Therefore, the undersigned will recommend the denial of those claims without

further consideration of their merits.

Merits - Ineffective Assistance of Counsel - Failure to Investigate Any Benefit Provided

to Rockette for her Testimony (Ground Two) and Failure to Present Crenshaw as a Witness

at Trial (Ground Three). In his second ground, Petitioner contends that his trial attorney

provided ineffective assistance by failing to investigate Rockette's criminal case to learn of,

and cross-examine her regarding, any benefit she received in her criminal case as a result of her testifying against Petitioner in this case.  For his third  ground for relief, Petitioner argues that his attorney provided ineffective assistance by failing to present Crenshaw as a witness at trial.  Respondent contends these grounds lack merit.

Standard of Review.  "In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")] to exercise only limited and deferential review of underlying state court decisions."  **Lomholt v. Iowa**, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  **Williams v. Taylor**, 529 U.S. 362, 413 (2000) ("**Taylor**"). If the state court's decision is not "contrary to" clearly established law, then the standard of "unreasonableness" applies and is "meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" **Williams v. Roper**, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Harrington v. Richter, 131 S. Ct. 770, 786 (2011)), cert. denied, 134 S. Ct. 85 (2013).  A state decision is an unreasonable

application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." **Taylor**, 529 U.S. at 407-08; <u>see</u> <u>also</u> **id.** at 413. "The unreasonable application inquiry is an objective one." **de la Garza v. Fabian**, 574 F.3d 998, 1001 (8th Cir. 2009).

In reviewing state court proceedings to ascertain whether they are contrary to or involve an unreasonable application of clearly established federal law, this Court "is limited to the record that was before the state court that adjudicated the claim on the merits." **Cullen v. Pinholster**, 131 S. Ct. 1388, 1398 (2011). Additionally, this Court's review is limited to consideration of the United States Supreme Court precedents at the time the state court issues its decision on the merits. **Greene v. Fisher**, 132 S. Ct. 38 (2011) (relying on <u>Cullen</u>, <u>supra</u>); <u>accord</u> **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010) ("[o]nly rulings in [United States] Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling [United States] Supreme Court holding on the point" (citations omitted)). The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir. 2008)) (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (per curiam)).

A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." **Ryan v. Clarke**,

387 F.3d 785, 790 (8th Cir. 2004) (internal quotation marks omitted) (quoting Jones v. Luebbers, 359 F.3d 1005, 1011-12 (8th Cir. 2004)).  Importantly, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The deference owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004).  Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by a state court at either the trial or appellate levels.  **Smulls**, 535 F.3d at 864-65.

Elements of an Ineffective Assistance of Counsel Claim.  An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel. **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing Kimmelman v. Morrison, 477 U.S. 365, 377 (1986)).  In **Strickland**, supra, the Supreme Court established a two-part test for determining whether or not an attorney provided effective assistance of counsel.  The petitioner must establish both deficient performance, i.e., that "counsel's representation fell below an objective standard of reasonableness," and prejudice, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  **Strickland**, 466 U.S. at 687-88, 694.  Importantly, to prevail on an ineffective assistance of counsel claim in a § 2254 habeas case, Petitioner

must do more than show that he would have satisfied Strickland's test if his

claim were being analyzed in the first instance, because under [28 U.S.C.] § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [state appellate court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

**Bell v. Cone**, 535 U.S. 685, 698-99 (2002) (one citation omitted); **Underdahl v. Carlson**, 381 F.3d 740, 742 (8th Cir. 2004).

For the performance prong of an ineffective assistance of counsel claim, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) ("**Armstrong**") (citing <u>Strickland</u>, 466 U.S. at 687-89). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting <u>Nolan v. Armontrout</u>, 973 F.2d 615, 618 (8th Cir. 1992)). The court is highly deferential in analyzing counsel's conduct and "'indulg[es] a strong presumption that counsel's conduct falls within the wide range of professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting <u>Middleton v. Roper</u>, 455 F.3d 838, 846 (8th Cir. 2006)).

To establish prejudice, there must be a showing of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland**, 466 U.S. at 694; **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir. 2010) ("**Kemna**") (quoting <u>McCauley-Bey v. Delo</u>, 97 F.3d 1104, 1105 (8th Cir. 1996)). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Kemna**, 590 F.3d at 596 (quoting <u>McCauley-Bey</u>, 97 F.3d at 1105); <u>accord</u> **Carroll v.**

**Schriro**, 243 F.3d 1097, 1100 (8th Cir. 2001) (quoting <u>Strickland</u>, 466 U.S. at 694). The petitioner bears the burden of showing such a reasonable probability, **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992); and, in determining whether or not there was prejudice, this Court must consider the totality of the evidence, **Kemna**, 590 F.3d at 596.

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. <u>See</u> **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. <u>See</u> **Strickland**, 466 U.S. at 697; **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005).

As to ground two, Petitioner has not satisfied his heavy burden to show the incorrectness or unreasonableness of the Missouri Court of Appeals' determination that he had not established his trial counsel provided ineffective assistance in failing further to investigate Rockette's criminal proceeding to ascertain whether or not she received a benefit in that case as a result of testifying against Petitioner in his criminal case, and in failing to impeach her based on any such benefit. As the Missouri Court of Appeals found in Petitioner's post-conviction appeal, Rockette testified that the County's disposition of charges against her had no bearing on her testimony against Petitioner, that she did not receive and was not promised anything as a result of that testimony, and that she did not expect anything in exchange for her testimony. Additionally, as that court concluded, any further impeachment of Rockette by defense counsel on this basis would not have negated any element of either offense for which Petitioner was convicted, so Petitioner has not demonstrated a reasonable probability that the

outcome of Petitioner's criminal trial would have changed as a result of such impeachment, especially in view of the substantial evidence of Petitioner's guilt presented at trial. Moreover, Petitioner has not shown that the record fails to support the state court's presumptively correct factual findings supporting its decision. Having found no prejudice resulting from Petitioner's trial attorney's challenged conduct, the undersigned will not consider whether that conduct constituted deficient performance.

With respect to ground three, Petitioner has not satisfied his heavy burden to show the incorrectness or unreasonableness of the Missouri Court of Appeals' determination that he had not established his trial counsel provided ineffective assistance in failing to present Crenshaw as a trial witness. In response to each questioned asked of him at the evidentiary hearing on Petitioner's post-conviction motion, except for the question asking his name, which he answered, Crenshaw pleaded his privilege against self-incrimination under the Fifth Amendment rather than answering the question. The state appellate court found Crenshaw's testimony constituted sufficient evidence to support counsel's reasonable trial strategy not to call Crenshaw as a witness for the defense at trial. Therefore, that court concluded Petitioner's trial attorney did not provide ineffective assistance of counsel in failing to call Crenshaw as a witness.

Petitioner has not demonstrated that this determination was unreasonable, or that the record fails to support the state court's presumptively correct factual findings regarding this issue. In **Battle v. Delo**, 19 F.3d 1547 (8th Cir. 1994), as amended on other grounds upon reconsideration, 64 F.3d 347 (8th Cir. 1995), the United States Court of Appeals concluded

that the petitioner's trial attorney was not ineffective for failing to call a witness when counsel's decision was a matter of trial strategy based on an expectation that the witness would "either deny any part in the crime or plead the Fifth Amendment." **Id.** at 1555-56.  Here, Petitioner's trial attorney testified at the post-conviction evidentiary hearing that she did not expect Crenshaw to admit participation in the crimes and was concerned that Crenshaw would plead the Fifth Amendment.  (Evidentiary Hr'g Tr., Resp't Ex. I, at 8-9.)  The state court did not unreasonably or incorrectly determine that Petitioner's counsel's performance was not deficient in failing, as a matter of reasonable trial strategy, to call Crenshaw as a witness at trial.  The record supports the state court's factual findings necessary to this determination.  Because counsel's performance was not deficient, the undersigned will not consider the prejudice element of an ineffective assistance of counsel claim.

Under the circumstances, the state appellate court's decision affirming the motion court's denial of relief on Petitioner's two ineffective assistance of trial counsel claims is not contrary to, or an unreasonable application of, clearly established Federal law; and is not based on an unreasonable determination of the facts.  Accordingly, the undersigned will recommend that those two claims, now presented as grounds two and three of Petitioner's federal habeas petition, be denied as without merit.

## Conclusion

After careful consideration, the undersigned will direct the sealing of the Legal File from Petitioner's underlying criminal case because it reveals a complete social security number; and will recommend that Petitioner's federal habeas petition be denied because

grounds one and four are procedurally barred and grounds two and three lack merit.

Accordingly,

**IT IS HEREBY ORDERED** that the Clerk of the Court shall file and maintain **UNDER SEAL** the Legal File for the underlying state criminal case (Resp't Ex. A at Document 9). Additionally,

**IT IS RECOMMENDED** that the 28 U.S.C. § 2254 petition of Andrew Roberson be **DENIED** without further proceedings.

The parties are advised that they have **fourteen days** to file written objections to this Recommendation and the Memorandum incorporated herein pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this <u>31st</u> day of July, 2014.